UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 4:12-CR-639 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | WEDNESDAY, AUGUST 2, 2023 |
| JEFFREY DEROND KERSEE, | . | 10:29 A.M. TO 10:51 A.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . .


SUPERVISED RELEASE HEARING

BEFORE THE HONORABLE RANDY CRANE
UNITED STATES DISTRICT JUDGE


     APPEARANCES:                SEE NEXT PAGE

     ELECTRONIC RECORDING OFFICER: SHANNON HOLDEN

     CASE MANAGER:           NOT IDENTIFIED

     OFFICIAL INTERPETER:     NONE PRESENT

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
battshott@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 4:12-CR-639 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | **WEDNESDAY, AUGUST 2, 2023** |
| JEFFREY DEROND KERSEE, | . | **10:29 A.M. TO 10:51 A.M.** |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . .

SUPERVISED RELEASE HEARING

BEFORE THE HONORABLE RANDY CRANE
UNITED STATES DISTRICT JUDGE

Appearances:

**For the GOVERNMENT:**          **SHERRI L. ZACK, ESQ.**
Assistant United States Attorney
Office of the United States
  Attorney
1000 Louisiana, Suite 2300
Houston, TX 77002

**For the DEFENDANT:**          **VICTORIA GILCREASE-GARCIA, ESQ.**
Assistant Federal Public Defender
Office of the United States
  Public Defender
440 Louisiana St., Suite 1350
Houston, TX 77002

U.S. PROBATION OFFICE:          Renee Moke

Transcription Service:          Cheryl L. Battaglia
Trinity Transcription Services
1081 Main Street
Surgoinsville, TN 37873
281-782-0802

1    **Houston, Texas; Wednesday, August 2, 2023; 10:29 a.m.**

2        **THE COURT:**  And then let's see, *12-CR-639-1, USA*

3    *versus Jeffrey Derond Kersey.*

4        **MS. ZACK:**  Sherry Zack on behalf of the United

5    States, your Honor.

6        **MS. GILCREASE-GARCIA:**  Victoria Gilcrease-Garcia on

7    behalf of Mr. Kersee.

8    **(Voices speaking off the record.)**

9    **(Pause in the proceeding.)**

10   **THE COURT:**  So these are going to pleas of what?  True?

11   Not true?

12       **MS. GILCREASE-GARCIA:**  Not true to all, your Honor.

13       **THE COURT:**  Not true to all.  Okay.

14   **(Pause in the proceeding.)**

15       **THE COURT:**  All right.  Mr. Kersee, before we get

16   started.  I need the oath administered to you.  Please raise

17   your right hand.

18   **(Defendant sworn.)**

19       **THE COURT:**  All right.  Mr. Kersee, can you state

20   your full name for the record?

21       **DEFENDANT KERSEE:**  Jeffrey Derond Kersee.

22       **THE COURT:**  Are you the same Jeffrey Derond Kersee

23   that was originally sentenced by Judge Hughes back in November

24   of 2013 to 10 years in prison followed by supervision, 5 years

25   of supervision in connection with some charges of -- were

1   transporting a minor.

2         Are you that same person?

3         **DEFENDANT KERSEE:**  Yes, your Honor.

4         **THE COURT:**  Have you had a chance to visit with your

5   lawyer about these new charges that are now pending that allege

6   that you have violated some of the provisions of supervision in

7   this case?

8         **DEFENDANT KERSEE:**  Yes.

9         **THE COURT:**  All right.  So your lawyer's indicated

10   you are going to plead not true to these allegations.  When you

11   plead not true, then you have the right to appear before Court

12   on these charges.  At this hearing, you'll be represented by a

13   lawyer at no cost to you.  At this hearing, you'll have the

14   opportunity to question any of the Government's witnesses,

15   object to any of their evidence.

16         Then you'll have the right to present any evidence in

17   defense of these allegations, including you'll have the right

18   to testify if you desire.  But cannot be forced to do so.

19         Do you understand these rights?

20         **DEFENDANT KERSEE:**  Yes, your Honor.

21         **THE COURT:**  And if I do find you violated any

22   provision of supervision, do you understand that you could be

23   sent back to prison for up to three years or five years?  What

24   is it on this one?

25     **(Pause in the proceeding.)**

1          **THE COURT:**  Nobody knows?

2          **MS. ZACK:**  I believe it's five years.

3          **THE COURT:**  Five years.

4          **MS. GILCREASE-GARCIA:**  Five.

5          **THE COURT:**  Five years.  Okay.  Normally that is --

6     data is provided to me, but it's not here.

7          All right.  So you could -- you understand you could

8     be sent to prison for up to five years?

9          **DEFENDANT KERSEE:**  Yes, your Honor.

10         **THE COURT:**  Great.

11         I'm going to have the lawyer for the Government now

12    read each allegation.  When she's finished with each, you're

13    going to answer whether it is true or not true.  So please

14    listen carefully.

15         **MS. ZACK:**  Yes, your Honor.

16         "Violation Number One:  On or about April

17              25th, 2022 in Harris County, Jeffrey Derond

18              Kersee did then and there unlawfully,

19              intentionally, and knowingly damage and

20              destroy tangible property, namely one

21              window owned by Kaylee (phonetic)

22              Marsteller (phonetic), a person having a

23              greater right to possession of the property

24              than the Defendant, and hereafter styled

25              the 'Complainant,' without the effective

1     consent of the Complainant.  Namely,

2     without any consent of any kind.

3     And the value of the pecuniary loss so

4     inflicted was at least $100 and under $750,

5     by striking the window with an unknown

6     object.

7     On October 25th, 2022, Mr. Kersee was

8     arrested and subsequently released on bond.

9     On November 1st, 2022, the case which was

10    under *Cause Number 2405928*, in the County

11    Criminal Court of Law Number 14 of Harris

12    County, Texas, was dismissed, based on the

13    request of the complaining witness.

14    According to the criminal complaint

15    details, Miss Marsteller reported

16    Mr. Kersee became upset with Complainant

17    because she was not answering his phone

18    calls and text messages.

19    Shortly thereafter, Mr. Kersee arrived at

20    the residence by attempting to make entry

21    into the home.  He stated, 'I'm going to

22    kill you.'  And proceeded to shatter her

23    residence window.

24    A witness stated she woke up and heard

25    Mr. Kersee.  Further the witness stated

1         Mr. Kersee yelled, 'Open the door, you

2         effing bitch.  I'm going to get you.'

3         The witness observed Mr. Kersee through the

4         window blinds with an unknown object in his

5         hands.  Police were contacted.

6         Violation Number Two:  Aggravated robbery,

7         deadly weapon.

8         On or about December 23rd, 2022 in Harris

9         County, Jeffery Derond Kersee did then and

10        there unlawfully, while in the course of

11        committing theft of property, owned by

12        Kaylee Marsteller with the intent to obtain

13        and maintain control of the property,

14        intentionally and knowingly threatened and

15        placed Kaylee Marsteller in fear of

16        imminent bodily injury and death.  And

17        Mr. Kersee did then and there use and

18        exhibit a deadly weapon, namely, motor

19        vehicle.

20        On February 2nd of 2023, Mr. Kersee was

21        arrested and subsequently released on bond.

22        The case, which was filed under *Cause*

23        *183968* in the 482nd District Court of

24        Harris County remains pending.

25        According to the criminal details, the

1     Complainant reported Mr. Kersee used his

2     fists to punch her in the face multiple

3     times, causing her nose to bleed and

4     causing her pain and discomfort.

5     After the assault, Mr. Kersee unlawfully

6     appropriated her purse, car keys, and

7     wallet with $500 cash inside, as well

8     Mr. Marsteller's vehicle.

9     Law Violation Three:  Assault family

10     member.

11     On or about December 23rd, Harris County,

12     Texas, Jeffrey Derond Kersee did then and

13     there unlawfully, intentionally, and

14     knowingly cause bodily injury to Kaylee

15     Marsteller, hereinafter styled the

16     'Complainant,' a person with whom

17     Mr. Kersee had a dating relationship, by

18     striking the Complainant with his fists.

19     On February 2nd, 2023, Mr. Kersee was

20     arrested and subsequently released on bond.

21     The case which was filed under *Cause Number*

22     *4222029* in the County Criminal Court at Law

23     Number 14 of Harris County remains

24     pending."

25     It's my understanding, your Honor, however, that

1    those cases have been dismissed in Harris County the --

2              **THE COURT:**  Okay.

3              **MS. ZACK:**  -- last two.

4              **THE COURT:**  Sure.

5              **MS. ZACK:**  But they were not at the time of this

6    filing.

7              **THE COURT:**  Okay.

8          **(Pause in the proceeding.)**

9              **MS. ZACK:**  And I believe your Honor has those.  They

10   were filed with the Government's exhibits.

11             **THE COURT:**  All right.  And so to those accusations,

12   how do you plead?  True or not true?

13             **DEFENDANT KERSEE:**  Not true.

14             **THE COURT:**  Not true.  All right.

15             So the Government has some evidence you want to

16   present?  I see you've seen what they filed.

17             **MS. GILCREASE-GARCIA:**  Yes, your Honor.

18             **THE COURT:**  All right.  Anything you want to present

19   in response?

20             I mean, any objection to its admission?

21             **MS. GILCREASE-GARCIA:**  Yes, your Honor.

22             **THE COURT:**  You do object?  Or you want to -- I asked

23   you two questions.  Sorry.

24             The -- I assume the Government's moving to admit

25   those exhibits for purposes of this hearing?

1        **MS. ZACK:**  Yes, your Honor.

2        **THE COURT:**  Any objection to those?

3        **MS. GILCREASE-GARCIA:**  Yes, your Honor.

4        **THE COURT:**  Okay.

5        **MS. GILCREASE-GARCIA:**  To certain portions of the

6    exhibits.

7        **THE COURT:**  Sure.  Tell me which -- which exhibits

8    you have any objection to.

9        **(Pause in the proceeding.)**

10        **MS. GILCREASE-GARCIA:**  Your Honor, we object to the

11    admission of hearsay statements in Exhibits 1, 2, 4 and 6.

12        **THE COURT:**  So -- so the statements by the police are

13    hearsay.  He's not here.  The officer isn't here, or the

14    officers aren't here.

15        They quote other -- they interview -- some of the

16    report is interview of other witnesses.  So we have hearsay

17    within hearsay.

18        **MS. GILCREASE-GARCIA:**  Yes.

19        **THE COURT:**  What -- what is it that you're objecting

20    to?

21        **MS. GILCREASE-GARCIA:**  Well, your Honor, a few

22    arguments in support.

23        **THE COURT:**  Uh-huh.

24        **MS. GILCREASE-GARCIA:**  So the Federal Rules of

25    Evidence, of course, don't apply during revocation hearings.

1  But --

2          **THE COURT:**  Right.

3          **MS. GILCREASE-GARCIA:**  -- admissibility of hearsay,

4  as the Court knows --

5          **THE COURT:**  Sure.

6          **MS. GILCREASE-GARCIA:**  -- isn't automatic.

7          **THE COURT:**  And confrontation clause issues.  We have

8  to respect those as well.

9          **MS. GILCREASE-GARCIA:**  Yes, your Honor.

10          **THE COURT:**  Right.

11          **MS. GILCREASE-GARCIA:**  And the Fifth Circuit and

12  other circuits have repeatedly stated that defendants in

13  revocation hearings have a due process right to confront and

14  cross examine adverse witnesses.  And the Court is supposed to,

15  when deciding whether to admit those hearsay statements,

16  consider the Defendant's right to confront those adverse

17  witnesses, balanced against the grounds for asserting -- or

18  the -- the grounds asserted by the Government for denying those

19  confrontation rights.

20          And they should only admit those statements if

21  they're shown to be reliable.  And so, for example, the Fifth

22  Circuit has found that it's appropriate, perhaps, to allow

23  hearsay statements in the form of lab report information --

24          **THE COURT:**  Uh-huh.

25          **MS. GILCREASE-GARCIA:**  -- during revocation hearings.

1 Because the Defendant's right to cross examine about the

2 science behind the lab reports, is relatively small.  They can

3 challenge that science through other means.  And the

4 Government's interest in present lab information, scientific

5 information, may be substantial.

6         In this situation, though, Mr. Kersee's interest in

7 cross examining the police officer, the complaining witness,

8 that's all significant.  The Probation Officer may testify

9 today.  But she, of course, wasn't there during the day of

10 either incident.

11         And nobody but the people who were actually present

12 can speak about the truth of what happened on April and

13 December of 2022.

14         So we ask the Court not to admit those hearsay

15 statements.

16     **THE COURT:**  So all of them are consistent.  These are

17 interviews of different witnesses who were there, I guess,

18 maybe one of them was the -- the mother of the victim, the

19 victim.  The Defendant was interviewed.  They have a

20 confession, a partial confession.

21     **(Pause in the proceeding.)**

22     **THE COURT:**  And because they're all consistent, they

23 seem to be reliable to the Court.  Does the Government have any

24 of these witnesses here or intend to?

25         **MS. ZACK:**  No, your Honor.

1          **THE COURT:** Yeah. I think -- okay.

2          **MS. ZACK:** I -- I can't imagine that even if we

3    served Ms. Marsteller, who provided an affidavit, that is

4    similarly hearsay, that she would say anything contrary to what

5    this affidavit is.

6          She, however, failed to show up. The reason that

7    these cases were dismissed was missing witness, or a request of

8    complaining witness. However, your Honor, I would proffer to

9    the Court that if the Probation Officer were called to testify,

10   that she was repeatedly given the wrong number for this witness

11   by the Defendant who, by the way, was not supposed to have any

12   contact with this witness.

13         And then eventually got on the phone with her. And

14   that Miss Marsteller told her I'm not saying that this didn't

15   happen. I'm just saying we've moved on.

16         **THE COURT:** So why was she -- was there a protective

17   order --

18         **MS. ZACK:** Yes.

19         **THE COURT:** -- that was entered at -- by the --

20         **MS. ZACK:** Well, there was --

21         **THE COURT:** -- county authorities or whatever?

22         **MS. ZACK:** It was a bond condition.

23         **THE COURT:** Oh, okay.

24         **MS. ZACK:** And --

25         **THE COURT:** On the State charges from the December

1    incident, I presume.

2              **MS. ZACK:**  I believe that this was --

3              **THE COURT:**  Or is from the April incident?

4              **MS. ZACK:**  -- on the December incident, yes.

5              **THE COURT:**  Okay.

6              **MS. GILCREASE-GARCIA:**  Your Honor, if I may?

7              **THE COURT:**  Uh-huh.  Sure.

8              **MS. GILCREASE-GARCIA:**  The Court indicated that there

9    were consistencies in the statements.

10             **THE COURT:**  Uh-huh.

11             **MS. GILCREASE-GARCIA:**  And there's indications that

12   those statement are reliable?

13             **THE COURT:**  Just because they were generally all

14   consistent about the incident.

15             **MS. GILCREASE-GARCIA:**  And, your Honor, that may be

16   the case with respect to what the Government presented.  But

17   the defense today submitted an affidavit.  It is also hearsay.

18             **THE COURT:**  I read it.

19             Was it -- it wasn't sworn to, just a statement.  And

20   it didn't have a -- a wet signature.  Just had a typed

21   signature.  Is that what you're talking about?

22             **MS. GILCREASE-GARCIA:**  Yes, your Honor.

23             **THE COURT:**  Okay.  Sure.

24             **MS. GILCREASE-GARCIA:**  I -- I intend to call, if --

25   if the Court allows these statements in, I intend to call as a

1    witness Miss Ermler, who's an -- a mitigation specialist who

2    did some investigation in this case.

3              **THE COURT:**  Uh-huh.

4              **MS. GILCREASE-GARCIA:**  And who spoke with the

5    complaining witness.  And can speak to what she would say.

6              **THE COURT:**  Okay.

7              **MS. GILCREASE-GARCIA:**  That is --

8              **THE COURT:**  Is --

9              **MS. GILCREASE-GARCIA:**  -- all to say that there are

10   indications that these statements are -- are conflicting and

11   are not reliable.

12             And given that, the Court shouldn't admit these

13   unreliable hearsay statements.  Sometimes hearsay within

14   hearsay --

15             **THE COURT:**  Uh-huh.

16             **MS. GILCREASE-GARCIA:**  -- to come into Court today.

17             The Defendant's interest is too great.  And the

18   Government's -- the Government's reason for not bringing these

19   witnesses is not enough to justify the introduction of this

20   evidence.

21             **THE COURT:**  Okay.  So --

22             **MS. ZACK:**  I can't put on somebody who's going to

23   lie, your Honor.

24             **THE COURT:**  No.  No.  I understand.

25             But you could call a police officer and say, is that

1   what she told you?  Is this what she told you?  And what did

2   you observe?  Do you observe the bloody nose?  But he already

3   described all that.

4          **MS. ZACK:**  That's right.

5          **THE COURT:**  And -- but -- but I'll -- so I'm going to

6   admit the Government's Exhibits.  I find them reliable and of

7   probative value.

8       **(Governments Exhibits were received into evidence.)**

9          **THE COURT:**  I'll admit the statement, unsigned --

10  unsworn statement of your client that was filed yesterday or

11  this morning.  I've read it.

12      **(Defendants Exhibit was received into evidence.)**

13         **THE COURT:**  Can I consider it?  If -- if there is

14  another witness you want to call, you have the right to call

15  witnesses.  But if you want to just give me a proffer what they

16  would say, I'll probably just accept that, or the Government

17  probably accepted as -- as what she would say to save you

18  having to call a witness.

19         But it's up to you.  It's your right to call

20  witnesses.

21         **MS. GILCREASE-GARCIA:**  Understood, your Honor.  Thank

22  you.

23         **THE COURT:**  So how would you like to proceed?

24         **MS. GILCREASE-GARCIA:**  We'd like to call the witness.

25  But if the Government would like to present their evidence

1 first because they have the burden.  Perhaps that would --

2         THE COURT:  Okay.  So --

3         MS. GILCREASE-GARCIA:  -- but as the Court prefers.

4         THE COURT:  Does the Government have any more

5 evidence besides the exhibits I admitted?

6         MS. ZACK:  Just argument, your Honor.

7         THE COURT:  Okay.

8         MS. GILCREASE-GARCIA:  Oh.

9         THE COURT:  Yeah.  So now it's your -- on you.

10         MS. GILCREASE-GARCIA:  Okay.  All right.

11         Then we will call Miss Ermler to the stand.

12         THE COURT:  All right.

13     **(Pause in the proceeding.)**

14         THE COURT:  You want to just stand by the microphone.

15 This should be brief.

16         THE WITNESS:  Sure.

17         THE COURT:  If you'd raise your right hand to be

18 administered the oath.

19     **(Witness sworn.)**

20         THE COURT:  All right.  So you've seen this written

21 statement by the victim?

22         THE WITNESS:  Yes.

23         THE COURT:  And when you spoke to her, did she affirm

24 all of those statements?

25         THE WITNESS:  Yes, she did.

1          I reviewed it line-by-line with her.

2          **THE COURT:**  All right.  Did she add anything

3     additional that wasn't in her statement that you think is

4     significant that the Court should consider?

5          **THE WITNESS:**  No.  The only correction she had was on

6     a zip code she had mistakenly wrote -- written down.

7          And then she did confirm that no one had coerced or

8     influenced her to write this statement.

9          **THE COURT:**  Okay.  Anything else you wanted to ask of

10    her?

11         **MS. GILCREASE-GARCIA:**  No, your Honor.  Thank you.

12         **THE COURT:**  Thank you very much.

13         So mitigation specialist, you work with the Public

14    Defender's Office?

15         **THE WITNESS:**  Yes.  Correct.  I'm a licensed social

16    worker --

17         **THE COURT:**  Perfect.

18         **THE WITNESS:**  --  as well.

19         **THE COURT:**  Okay.  Nice to meet you.

20         I'm not here in Houston that often, but I'm trying to

21    get to know everybody and all the faces.  So thank you for

22    being here.

23         I don't think there's any need for cross examination.

24    So you may be seated.

25         **THE WITNESS:**  Okay.

1     **(Witness steps down.)**

2          **THE COURT:**  Is there any other evidence you'd like to

3     submit?

4     **(Pause in the proceeding.)**

5          **MS. GILCREASE-GARCIA:**  No, your Honor.

6          **THE COURT:**  All right.

7          **MS. GILCREASE-GARCIA:**  Thank you.

8          **THE COURT:**  Then let me make my findings.  Based on

9     the evidence, by a preponderance of the evidence, which is the

10    standard here.

11         **MS. GILCREASE-GARCIA:**  Your Honor, I apologize for

12    the interruption.  We did have argument if the Court will

13    allow.

14         **THE COURT:**  All right.  I'm going to give each side

15    two minutes.

16         **MS. GILCREASE-GARCIA:**  Understood.

17         **THE COURT:**  All right.  I'm trying to have a -- a

18    meeting at 11 with the U.S. Attorney.  And then I have a noon

19    meeting with all the Houston Judges.  I'm presiding over both.

20         So if you're going to need more time than just a

21    minutes, we'll have to reset.  But -- but --

22         **MS. GILCREASE-GARCIA:**  Understood, your Honor.

23         **THE COURT:**  -- you can go.

24         **MS. GILCREASE-GARCIA:**  I think I can be --

25         **THE COURT:**  Sure.

1     **MS. GILCREASE-GARCIA:** -- relatively brief.

2     As the Court was noting, Mr. Kersee -- the

3 Government's alleging that Mr. Kersee violated his supervised

4 release conditions. And the Government needs to prove by a

5 preponderance, not by a reasonable doubt, by a preponderance,

6 which is still a significant standard and burden to overcome,

7 that he has violated the terms of his supervised release.

8     The Government's evidence of these violations is

9 sparse and unreliable. To support the violations, they have

10 not called any witnesses whatsoever. They haven't called a

11 police officer. They haven't called the complaining witness.

12 They haven't called any of the other witnesses that they say

13 are present during the days of these incidents. They rely

14 entirely on State Court complaints and hearsay statements by

15 police officers.

16     Those aren't entitled to that much weight for a

17 number of reasons. They contain multiple hearsay. We --

18 because the Government hasn't called those witnesses, we can't

19 cross examine the officers about whether they're, you know,

20 whether they had the actual ability to proceed. Some of the

21 things that they referenced --

22     **THE COURT:** Sure.

23     **MS. GILCREASE-GARCIA:** We can't cross examine them to

24 test their reliability, their credibility.

25     We have no idea how credible they are. Or we have no

1   idea about their history, about their experience.  We --

2            **THE COURT:**  Uh-huh.

3            **MS. GILCREASE-GARCIA:**  We can't get any of that

4   information.  And there's a reason why hearsay isn't allowed in

5   trials, because it's, you know, it's like a game of telephone.

6            Information gets lost the further down the chain that

7   you go.  And so for that reason, the information isn't

8   reliable.

9            We also had some real proof that the statements -- or

10  these -- these incidents didn't actually happen.

11  Ms. Marsteller has submitted an affidavit.  She swore under

12  penalty of perjury that it was true.  She spoke to an

13  investigator from our -- or mitigation specialist who

14  investigated this case who verified that she agreed with every

15  single statement in that affidavit.  She still says that's

16  true.  She signed it.

17           She says she doesn't remember anything that happened

18  April, 2022.  She says that on December, it didn't happen the

19  way that the police describe.  And she doesn't know how the

20  police got the information that they're putting in this report.

21           And so based on those two conflicting reports,

22  there's just not enough information for the Court to find by a

23  preponderance that these violations happened.

24           These cases were all dismissed on the State Court

25  level.

1      **THE COURT:**  All right.  And I did pro bono work

2   before I became a lawyer for a battered women's shelter.  I

3   understand how these -- how women will, in abusive

4   relationships, will change their mind out of fear, or economic

5   reasons.  And again, I'm very familiar with what motivates

6   victims of domestic assault to -- to change their stories.

7      **MS. GILCREASE-GARCIA:**  And certainly, your Honor,

8   that happens.  But there are also examples of people who say

9   one thing to the police, because they're angry.  And it just

10  doesn't turn out to be true.

11     **THE COURT:**  I a hundred percent agree.  But this one

12  we had evidence of the truth, given the bloody nose.  And then

13  you had other corroborating witnesses.  It wasn't just the

14  victim who was -- who -- who cried out.  There were other

15  people who corroborated this incident.

16     **MS. GILCREASE-GARCIA:**  And, your Honor, we don't have

17  photos of the bloody nose.

18     **THE COURT:**  Yeah.

19     **MS. GILCREASE-GARCIA:**  We don't have any witnesses to

20  say they saw it.  We just have a statement in the police

21  report.  We don't know how it got there.

22     **THE COURT:**  All right.  Anything else you want to

23  add?

24     **MS. GILCREASE-GARCIA:**  Nothing further, your Honor.

25  Thank you.

1          **THE COURT:**  All right.  I don't need any more

2   argument.

3          All right.  So it's -- based on the preponderance of

4   the evidence, the Court finds the Defendant violated both --

5   each provision of supervision to which -- in which we was

6   charged.

7          I normally sentence people now.  But I can set it for

8   a sentencing hearing if you -- nobody feels like there's a need

9   to put this off.

10          **MS. GILCREASE-GARCIA:**  No, your Honor.

11          **THE COURT:**  Okay.

12          **MS. GILCREASE-GARCIA:**  We'd like to emphasize just a

13   few facts.

14          **THE COURT:**  Sure.

15          **MS. GILCREASE-GARCIA:**  Thank you, your Honor.

16          So the Guideline range as the Government, or the

17   Probation Officer has presented to the Court, is four to ten

18   months.

19          **THE COURT:**  Uh-huh.

20          **MS. GILCREASE-GARCIA:**  We ask for a sentence at the

21   lowest end of that Guideline range.  Mr. Kersee's 38 years old.

22   Born and raised in Houston.  He's close with his mother and

23   half-sister.

24          He has two children; one -- one is in Sacramento.

25   But one's here in Houston.  He co-parents.

1      **(Pause in the proceeding.)**

2           **MS. GILCREASE-GARCIA:**  Except for his past federal

3      conviction, he has no significant criminal convictions at all.

4      He has one past conviction for driving while license invalid.

5           Based on his history and characteristics, we ask the

6      Court to give the low end --

7           **THE COURT:**  Okay.

8           **MS. GILCREASE-GARCIA:**  -- Guideline sentence.

9           **THE COURT:**  You get to speak also before I sentence

10     you.  Is there anything you want to add?

11     **(Pause in the proceeding.)**

12          **DEFENDANT KERSEE:**  No.

13          **THE COURT:**  Okay.  Anything the Government wants to

14     add?

15          **MS. ZACK:**  Just, your Honor, we believe that a

16     sentence at the high end of the Guidelines is appropriate.

17          This is not one incident.  This is multiple

18     incidences.  He clearly has an anger management problem.  There

19     is, I believe, reliable evidence that he did commit these

20     crimes, regardless of what the victim says.

21          And as your Honor pointed out, there are multiple

22     motivations as to why she would not be here and would want to

23     remain with someone who finds it necessary to beat the snot out

24     of her.

25          I think that a ten-month sentence would allow the

1  Defendant an opportunity to maybe engage in some anger

2  management counseling while incarcerated.

3       And if he is not able to do that, I believe that when

4  he returns back to supervised release, this Court should amend

5  that order to include anger management counseling so that,

6  either when he is with this individual or any other individual,

7  he has a intimate relationship with, he can conduct himself in

8  accord with the law.

9       **THE COURT:**  Right.

10      And Miss Moke is it Moke or Moke?

11      **U.S. PROBATION OFFICER MOKE:**  Yes, your Honor.

12      **THE COURT:**  Miss Moke, so I'm going to -- I'm going

13  to -- he's going to have a period of incarceration.  I'm

14  putting him back on supervision.  He's going to obviously need

15  an anger management course or a conflict resolution course.

16      What other special conditions do I need to impose on

17  him?  Out-patient drug?  Is that an issue?

18      **U.S. PROBATION OFFICER MOKE:**  He does have a lot of

19  sex offense-specific treatment related cases because of the

20  instant offense.

21      **THE COURT:**  Okay.

22      **U.S. PROBATION OFFICER MOKE:**  So we would need all of

23  those --

24      **THE COURT:**  All of those.

25      **U.S. PROBATION OFFICER MOKE:**  -- as well.

1      **THE COURT:**  Okay.

2      **U.S. PROBATION OFFICER MOKE:**  In addition to, which

3   it was recommended, a battering intervention and prevention

4   program.

5      **THE COURT:**  Sure.  Okay.

6      **U.S. PROBATION OFFICER MOKE:**  Because of his --

7      **THE COURT:**  Right.

8      **U.S. PROBATION OFFICER MOKE:**  -- arrest.

9      **THE COURT:**  So the Court considers all those factors

10  under 18 U.S.C. 3553(a) to include a sentence I'm going to

11  pronounce satisfies them.  And therefore, it's the judgment of

12  this Court, Defendant's committed to the Custody of Bureau of

13  Prison for a term of six months.

14      Upon release from imprisonment, I'm reimposing

15  supervision to the original expiration date with all the

16  conditions he was previously under.  And in addition, I'm going

17  to require that he participate in a anger management/conflict

18  resolution course until he completes that program with the

19  approval of his probation officer and program director.

20      That's good, right?

21      **U.S. PROBATION OFFICER MOKE:**  Yes, your Honor.

22      **THE COURT:**  Perfect.  All right.  And that's your

23  sentence.

24      You do have two weeks to appeal.  If you couldn't

25  afford the cost of appeal, you could ask that I waive them.

1    **MS. GILCREASE-GARCIA:** I'm sorry, your Honor.  I

2 didn't hear the language -- the imprisonment terms.

3        **THE COURT:** Six.

4        **MS. GILCREASE-GARCIA:** Was it --

5        **THE COURT:** Six months.

6        **MS. GILCREASE-GARCIA:** Six.  Thank you.

7        **THE COURT:** All right.  Good luck to you, sir.

8 You're excused at this time.

9        All right.  We'll be in recess.

10        **UNITED STATES MARSHAL:** All rise.

11    **(This proceeding was adjourned at 10:51 a.m.)**

12

13                   CERTIFICATION

14

15 I certify that the foregoing is a correct transcript from the

16 electronic sound recording of the proceedings in the above-

17 entitled matter.

18

19

20    ____/s/*Cheryl L. Battaglia*____        August 31, 2023

21        Transcriber                          Date

22 4:12-CR-639

23 08/02/23 - 08/31/23